**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **S.B., a minor, by and through her guardians ad litem KRISTINA B. and MICHAEL B., and KRISTINA B. and MICHAEL B., individually,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**CALIFORNIA DEPARTMENT OF EDUCATION and THE STATE OF CALIFORNIA, GOVERNOR EDMUND GERALD BROWN, JR., in his official capacity, and THOMAS TORLAKSON, in his official capacity,**<br><br>**Defendants.** | **1:17-cv-01507-LJO-BAM**<br><br>**MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTIONS TO DISMISS**<br><br>**(Docs. 25, 28)** |

## I.  INTRODUCTION

Pending before the Court are two Motions to Dismiss filed by Defendants:  the first (Doc. 25) was filed by the California Department of Education ("CDE") and Thomas Torlakson (Torlakson) (collectively, Agency Defendants); the second (Doc. 28) was filed by the State of California (the State) and Edmund Gerald Brown, Jr. (Brown) (collectively, State Defendants).  Both motions are accompanied by requests for judicial notice.  Plaintiffs oppose both motions.  For the reasons set forth below, State Defendants' motion (Doc. 28-1) is GRANTED and all claims against the State and Brown are DISMISSED.  Agency Defendants' motion (Doc. 25) is GRANTED in part; all claims against CDE are DISMISSED; and Agency Defendants' motion to dismiss the Section 1983 claim against Torlakson is DENIED.

## II.    FACTUAL BACKGROUND[1]

**A.    S.B.'s Relevant School-Placement History**

Pursuant to the allegations of the First Amended Complaint (FAC), Plaintiff S.B. is a 16-year old student who is eligible for special education due specific health and learning disabilities.  She has been diagnosed with Bipolar Disorder with Mood-Incongruent Psychotic Features, Oppositional Defiant Disorder, Attention Deficit Hyperactivity Disorder (ADHD), Major Depressive Disorder with auditory and visual hallucinations, along with a specific learning disability.

During the 2014-2015 school year, S.B. was in the seventh grade and enrolled in the Fresno Unified School District (Fresno Unified).  In August 2014, S.B.'s individualized Education Plan (IEP) placed her in a mild/moderate special day class four periods per day and provided a behavior intervention plan that provided 10 minutes per day of behavior intervention services.  (Doc. 26-1, Amended Due Process Cmplt. (ADPC) ¶¶ 4-9.)

In July 2015, S.B. was placed on an involuntary psychiatric hold for being a danger to herself or others and she remained in a psychiatric hospital until August 5, 2015.  (Doc. 26-1, ADPC, ¶ 13.)  After her release from the hospital, she was placed at Phoenix Secondary Academy, within Fresno Unified, during the 2015-2016 school year.  (*Id.* ¶ 14.)  S.B's mental health continued to decline.  In October 2015, she was again admitted to the hospital on an involuntary psychiatric hold due to suicidal ideation, was

---

[1] All Defendants and Plaintiffs request that the Court take judicial notice of various documents issued by the OAH, filed with the OAH, or issued by a court.  (Docs. 26, 28-2, 32, 34, 36, 37, 38-1).  Many of these requests are overlapping, and none are disputed.  Federal Rule of Evidence 201 permits a court to take judicial notice of a fact not subject to reasonable dispute because it is either generally known within the trial court's territorial jurisdiction or it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  All the documents the parties seek the court to judicially notice are public records.  A court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. *MGIC Idem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).  The Court may take notice of undisputed matters of public record – i.e., that a particular document was filed, that an order was issued, etc., but the court cannot take notice of any disputed facts stated in those public records.  Thus, where a court takes judicial notice of another court's opinion, for example, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute.  Here, the Court grants the parties' requests for judicial notice as to the existence of the documents, but does not take notice of the truth of any contents that are disputed therein.

The factual summary is based, in part, on the contents of judicially-noticed documents.  This factual summary does not constitute a finding of fact with respect to any disputed matter; it is intended only to provide context for the parties' dispute.

admitted to an acute psychiatric facility in November, and after release, was again placed on an involuntary psychiatric hold for suicidal ideation. (*Id.,* ¶ 16.) S.B. returned to school at the beginning of December 2015. By December 16, 2015, S.B. was suspended for two days for disruptive behavior – i.e., yelling profanity at staff and peers, and she was thereafter again placed on an involuntary psychiatric hold as being a danger to herself or others. (*Id.*, ¶ 30.)

In February 2016, Fresno Unified IEP team met to change S.B.'s placement and offered a non-public school with 10 minutes per day of behavior services, and 30 minutes per week of individual counseling. (*Id.*, ¶ 33.) In early March 2016, S.B. was again placed on an involuntary psychiatric hold as a danger to herself or others; she was discharged a week later, only to be readmitted again on March 29, 2016, on the same basis. (*Id.*, ¶ 40.)

On April 5, 2016, Fresno Unified convened a 30-day IEP to review the non-public placement; Fresno Unified again offered a nonpublic school placement with 10 minutes per day of behavior services, and thirty minutes per week of individual counseling. (*Id.*, ¶ 42.) On April 16, 2016, S.B. was placed in juvenile hall for acts of physical aggression Plaintiffs maintain resulted from her mental health deficits. (*Id.*, ¶ 49.)

The juvenile hall school was operated by Fresno County Office of Education which offered an interim IEP to S.B. of 150 minutes of specialized instruction, 10 minutes per day of behavior services, and thirty minutes per week of counseling services (essentially the same IEP as offered by Fresno Unified). (*Id.,* ¶ 55.) In May 2016, Fresno County convened a 30-day IEP team meeting, which resulted in the same IEP offer as before. For the remainder of the school year, S.B. continued to struggle with her behavior, lack of work completion, and mental health issues. (*Id.*, ¶ 60.)

Because S.B. was now under the auspices of the Fresno County Juvenile Probation, that agency determined her ninth-grade placement for the 2016-2017 school year. Fresno Juvenile placed S.B. at Victor Treatment in Santa Rosa, California. (FAC, ¶¶ 25-26.) According to Plaintiffs, this change in Local Educational Agency ("LEA") was mandated by California Education Code § 56162 and § 56156.4.

In relevant part, Section 56162 requires that students with exceptional needs placed by a public agency (other than an educational agency) in a children's institution shall be considered residents of the geographical area where the children's institution is located for purposes of special education and related services. Section 56156.4 provides direction as to how and which local agency would provide special education services. As a result of these provisions, Sonoma County Office of Education, not Fresno Unified, was charged with overseeing S.B.'s IEP and educational needs.

S.B.'s placement at Victor Treatment did not go well. She received at least ten major behavior reports for leaving the program, self-injurious behavior, assaultive behavior, property destruction, and running away from staff; she had to be restrained and, on at least seven occasions in a two-week period, was hospitalized for being a danger to herself or others. Her placement at Victor Treatment was terminated on September 7, 2016, and because she was ostensibly returned to Fresno, her LEA changed back to Fresno County Office of Education. Because S.B. was only within Sonoma County's jurisdiction for 3 weeks, she was not assessed, no IEP was convened, and S.B.'s parents did not have time to exercise their right to obtain a new assessment or IEP. (FAC, ¶¶ 29-30.)

On October 3, 2016, Fresno Juvenile placed S.B. at Milhous in Elk Grove, California. As a result, S.B.'s supervising LEA changed to Elk Grove Unified School District. S.B. was hospitalized within two days of her admittance to Milhous, and she remained in a psychiatric hospital until November 7, 2016, when she was again returned to juvenile hall by Fresno Juvenile. Again, her LEA changed from Elk Grove back to Fresno County Office of Education. (FAC, ¶¶ 32, 34, 35.)

In early January 2017, Fresno Juvenile transferred oversight of S.B. to Fresno County Department of Social Services (Fresno DSS), as Plaintiffs maintain Fresno Juvenile could not meet S.B.'s needs. (FAC, ¶ 37.) Fresno DSS placed S.B. in a group home in Kern County, and her supervising LEA changed yet again, this time to Kern County High School District. (FAC, ¶ 38.) Kern County failed to make any interim placement offer and S.B. was put on an independent study program, but no comprehensive assessment or new IEP was formulated. (FAC, ¶ 39.) From January 9, 2017, through February 15, 2017,

S.B. refused to perform work, left class without permission, exhibited aggression toward staff, engaged in self-injurious behaviors, and attempted inappropriate sexual conduct. S.B.'s parents also believe she was hospitalized during this time as being a danger to herself or others. (FAC, ¶ 40.)

On February 17, 2017, Fresno DSS changed S.B.'s placement to Charis Youth Center in Grass Valley, which changed S.B's supervising LEA for the eighth time in less than a year to Nevada Joint Union High School District. (FAC, ¶ 42.) S.B. was moved again after about 6 weeks to a group home in the Redlands Unified School District. (FAC, ¶ 44.) S.B. exhibited all the previous behavioral problems including refusal to work, leaving class without permission, aggression toward staff, and self-injurious behaviors including intentionally stepping into oncoming traffic. On April 19, 2017, Redlands Unified suspended S.B. for five days for assaultive behavior and on April 28, 2017, S.B. was discharged from the group home for running away. (FAC, ¶ 45.)

Fresno DSS placed S.B. in a group home in Fresno under the educational supervision of Fresno Central Unified School District, but she was never enrolled in school. (FAC, ¶¶ 48-49.) By May 15, 2017, S.B. was again placed in juvenile hall due to assaultive behavior in the group home, and her LEA changed once again to Fresno County Office of Education. S.B. was returned to the group home in Fresno Central Unified (again changing her LEA from Fresno County Office of Education to Fresno Central Unified), but by May 25, 2017, S.B. was again admitted to a psychiatric hospital as a danger to herself or others. (FAC, ¶¶ 54-55.)

In June 2017, Fresno Juvenile or Fresno DSS (it is unclear which) placed S.B. at Victor Treatment Center in Lodi, changing her LEA to Linden Unified School District. (FAC, ¶ 56.) In October 2017, this placement was terminated, and Fresno DSS placed S.B. with her mother for 6 days, during which time Fresno Unified was her assigned LEA. On October 9, 2017, S.B. was placed in a group home in Ventura County, but within two days she had run away and was hospitalized as a danger to herself. (FAC, ¶ 65.) By October 16, 2017, S.B. was given a seven-day termination notice from the Ventura group home, and she was again returned to the care of her mother. As of November 1, 2017, the jurisdiction of

the "dependency court" was terminated, and S.B. was waiting for placement at Judge Rotenberg, an out-of-state residential treatment program in Massachusetts.

**B.    Plaintiffs' Complaint to OAH**

In July 18, 2017, S.B. and her parents filed a due process complaint under the Individuals with Disabilities Education Act (IDEA) with the California Office of Administrative Hearings (OAH), naming as defendants the State Defendants, the Agency Defendants, Fresno Juvenile, Fresno DSS, and the eight LEAs who had responsibility for S.B. over the prior two years.

On July 19, 2017, Plaintiffs filed an amended due process complaint with the OAH, and both the CDE and the State of California filed motions to be dismissed as parties from the administrative proceedings.  OAH dismissed CDE and the State of California, determining that the claims against these entities were outside the scope of OAH's jurisdiction.

On December 15, 2017, the OAH issued a notice of case dismissal indicating that Plaintiffs' due process complaint against the remaining parties, the LEAs, had been settled through mediation.  (Doc. 26-1, p. 50.)

**C.    Plaintiffs' Complaint Before This Court**

Meanwhile, on November 8, 2017, Plaintiffs filed suit against the parties dismissed from the OAH proceeding, i.e., the State of California and CDE, and named additional Defendants Brown and Torlakson.

Plaintiffs' FAC sets out six claims for relief.  The first claim for relief against CDE and the State is under the IDEA.  Plaintiffs maintain California's Education Code requires a student's assigned LEA to be based on geographic placement of the student.  This, however, resulted in a constant change of LEA and precluded S.B. from receiving an assessment, an appropriate IEP, and, ultimately, a Free Appropriate Public Education (FAPE).[2]  In S.B.'s case, in the time it took for the receiving LEA to convene an IEP

---

[2] A FAPE encompasses special education and related services provided at public expense and without charge, that meets the

and offer to assess S.B., S.B. was either sent back to juvenile hall, was admitted to a psychiatric hospital, or was otherwise moved by either Fresno Juvenile or Fresno DSS. Because of these residency rules requiring a student's LEA to be assigned based on geographic placement of that student, S.B. was denied the processes necessary to ensure her educational rights. Plaintiffs allege that the State and CDE have an obligation to ensure a FAPE is available to all children, including children who are in the dependency and delinquency system, as well as children with severe mental health deficits. Plaintiffs seek a judicial order requiring the State and CDE to develop policies and procedures to ensure that students within the juvenile justice system have one designated LEA responsible for development of IEPs, not dependent on the geographic location of their placement.

Plaintiffs' second claim is also under the auspices of the IDEA's requirement that special education students be placed in the least restrictive environment under 20 U.S.C. §1412(a)(5), as close as possible to a student's home as required by 34 C.F.R. § 300.116(b)(3) and California Education Code § 56342. Moreover, there must be a continuum of placements available to meet the needs of a disabled student under 34 C.F.R. § 300.115 and California Education Code § 56342. Plaintiffs allege that, due to the severity of her mental health needs, S.B. required an educational placement in an appropriate residential treatment center within the state of California in order to receive a FAPE. Plaintiffs allege the State and CDE have failed to ensure that special education students with the most severe mental health needs have access to in-state residential treatment centers. Instead, students are "shipped out of state far from their homes" to receive the care they require, which makes it impossible to transition back into their communities when the placement ends. Plaintiffs seek a judicial order requiring the State and CDE to develop policies and procedures to assure residential treatment centers are available in-state for students with severe mental health needs.

standards of the State educational agency, includes an appropriate education in the state involved, and is provided in conformity with the individualized education program required under 20 U.S.C. § 1414(a)(5). *See* 20 U.S.C. § 1401(18).

Plaintiffs' third claim for relief is against CDE and the State for violation of § 504 of the Rehabilitation Act of 1973 (RA). Plaintiffs allege the State and CDE, by failing to ensure appropriate residential treatment centers are available inside California, deny equal access to education services to those with severe mental health needs.

Plaintiffs' fourth claim for relief is against the State and CDE for violation of Title II of the Americans with Disabilities Act of 1990 (ADA). Plaintiffs allege the State and CDE's failure to ensure access to residential treatment facilities inside California resulted in S.B. missing numerous instructional hours and led to recurrent hospitalizations. Moreover, S.B.'s emotional lability made it impossible for her to meet and sustain the behavioral requirements of the various institutions where she was placed, which resulted in a plethora of different placements in different geographic locations, each supervised by a different LEA. As a result, no LEA had time to conduct an assessment, revise S.B.'s IEP, and S.B.'s parents did not have time to initiate a request for this type of review. As such, Plaintiffs maintain S.B. was denied access to an educational program within California specifically because of her mental health needs.

Plaintiffs' fifth claim for relief is against Brown and Torlakson in their official capacities under 42 U.S.C. § 1983. Plaintiffs maintain that as S.B's responsible LEA changed with each new placement, it was impossible for S.B. to receive an appropriate education and denied her due process of law.

Finally, Plaintiffs' sixth claim is against all Agency and State Defendants for declaratory relief. Plaintiffs maintain the residency scheme set forth in California Education Code sections 56156.4 and 56162 result in a disparate impact on students with significant mental health disorders and/or other highly mobile students with disabilities such as S.B., in that they are denied the benefits of one consistent agency responsible for their educational assessments. Plaintiffs seek a determination that these California Education Code sections violate the California Constitution.

# III.  LEGAL STANDARDS

## A.  Motion to Dismiss under Rule 12(b)(1)

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). A Rule 12(b)(1) motion tests whether a complaint alleges grounds for federal subject matter jurisdiction. A motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint on its face fails to allege facts sufficient to establish subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). In considering a Rule 12(b)(1) motion, the Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).  Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto. Ins. Co*., 598 F.3d 1115, 1122 (9th Cir. 2010).

## B.  Motion to Dismiss Under Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint.  Dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dep't*., 901 F.2d 696, 699 (9th Cir. 1990).  In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements'. . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]o be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts, a plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## IV.    ANALYSIS

### A.    The Eleventh Amendment Precludes Certain Claims[3]

#### 1.  Declaratory Relief Claim is Precluded Under the Eleventh Amendment

Plaintiffs' sixth cause of action seeks declaratory relief against all Defendants requesting a determination that the California Education Code sections 56156.4 and 56162 violate the California Constitution. State Defendants argue that pursuant to *Pennhurst v. Halderman*, federal courts are prohibited from enjoining state officials from violating *state* law under the Eleventh Amendment, and therefore this Court lacks subject matter jurisdiction over Plaintiffs' sixth cause of action. 465 U.S. 106 (1984). Agency Defendants make the same argument, citing *Alden v. Maine*, 527 U.S. 706, 749-50 (1999).

---

[3] Defense of sovereign immunity is "quasi-jurisdictional" and may be raised in a motion under either Civil Rule 12(b)(1) or Civil Rule 12(b)(6). *Sato v. Orange Cnty. Dept. of Educ.*, 861 F.3d 923, 927 n.2 (9th Cir. 2017), cert. denied, 138 S. Ct. 459 (2017).

Although acknowledging the State and its agencies may exercise the right to immunity under the Eleventh Amendment for claims made on the basis of state law, Plaintiffs argue that, as a matter of judicial economy, Defendants should not be able to shield themselves from their alleged unconstitutional statutory provisions. Plaintiffs argue their claims challenging the validity of Education Code Sections 56156.4 and 56162 under the IDEA (a federal statute that expressly waives sovereign immunity of the states who accept federal funding under the statute), under the Procedural Due Process Clause of the Fourteenth Amendment, and under the California State Constitution are all inextricably intertwined. Plaintiffs contend they should not be compelled to separately file their challenge to the California Constitution on the same intertwined grounds in state court.

It is well-settled that the "Eleventh Amendment bars suit against state officials when the state is the real, substantial party in interest . . . ." *Pennhurst*, 465 U.S. at 101-02. Consequently, pursuant to the Eleventh Amendment, a federal court may not grant relief "in a suit against state officials on the basis of state law." *Id.* at 106; *see also Han v. United States Dept. of Justice*, 45 F.3d 333, 339 (9th Cir. 1995) ("We are barred by the Eleventh Amendment from deciding claims against state officials based solely on state law."). Pursuant to this well-settled precedent, whether Plaintiffs' declaratory relief claim asserting portions of the California Education Code violate the California Constitution is intertwined with their other federal claims, federal courts have no discretion to entertain private suits against a state and its officials on the basis of state law. *Pennhurst*, 465 U.S. at 106. This Eleventh Amendment immunity extends to state law claims over which a federal court could exercise supplemental jurisdiction. *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 541 (2002). Plaintiffs' claim for declaratory relief on state law grounds against the State, its agency the CDE, and state officials, is barred by the Eleventh Amendment. *Id.*

Plaintiffs' sixth cause of action for declaratory relief based on violation of the California State Constitution against all Defendants is DISMISSED without prejudice for lack of subject matter jurisdiction under the Eleventh Amendment.

## 2. Section 1983 Claim For Violation of Procedural Due Process

Plaintiffs allege that Defendants Brown and Torlakson, in their official capacities as Governor of California and Superintendent of Public Instruction in California, respectively, deprived S.B. of her constitutional procedural due process rights through "enactment and enforcement of the statutory scheme that caused [S.B.'s] local educational agency to change with each placement change." (FAC, ¶ 112.) Plaintiffs allege "[t]his frequent change in responsible [LEA] made it impossible for S.B. to receive an appropriate education and denied her due process of law." (FAC, ¶ 113.) More specifically, S.B.'s placement was changed ten times in approximately one academic school year, resulting in ten different responsible LEAs. (FAC, ¶ 50.) Because the placement changes occurred so frequently, Plaintiffs contend no LEA was able to commence the proper educational assessments, IEP meetings, or include S.B.'s parents in the IEP process – not only did this ultimately result in depriving S.B. of a FAPE under IDEA, it also denied Plaintiffs procedural due process rights.

### a. Section 1983 Claim Against Brown is Barred

State Defendants argue the § 1983 claim against Defendant Brown must be dismissed for three reasons: (1) there is no case or controversy between Plaintiffs and Defendant Brown; (2) the claim is barred by the Eleventh Amendment; and (3) Defendant Brown has absolute legislative immunity.

State Defendants contend Brown has no connection to the due process violations alleged and thus is immune from suit under § 1983; State Defendants contend that where the official's connection to the challenged action is so attenuated such that relief as to that official would not redress the plaintiff's injuries, that official must be dismissed for lack of redressability under Article III of the U.S. Constitution. (Doc. 28-1, 14:25-15:6 (citing *Southern Pac. Transp. Co. v. Redden*, 651 F.2d 613, 614-15 (9th Cir. 1980)).) Plaintiffs did not address these arguments in their opposition as to Brown. (*See* Doc. 33.)

The Court agrees with State Defendants. Brown is not alleged to have any direct connection to the enforcement of the California Education Code such that any relief ordered against Brown would redress Plaintiffs' injuries. *See Lujan v. Defenders of Wildlife*, 540 U.S. 555, 559 (1992) (Article III

standing requires injury, a causal connection between injury and conduct traceable to the defendant, and the injury can be redressed by a favorable decision). Moreover, Brown is entitled to immunity under the Eleventh Amendment. As discussed above, the Eleventh Amendment poses a general bar against federal lawsuits brought against a state. *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003). And, while it does not bar actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law, *Ex parte Young*, 209 U.S. 123, 155-56 (1908), the individual state official sued "must have some connection with the enforcement of the act," and that connection "must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit," *id.*. at 157. Brown, sued in his official capacity, has no alleged factual connection to the enforcement of the California Education Code, other than a general duty to enforce California law as the governor. *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 2002); *Ass'n des Eleveurs de Carnards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013) (Governor entitled to Eleventh Amendment immunity where his only connection to challenged California statute was a general duty to enforce California law. The § 1983 claim against Defendant Brown is DISMISSED for lack of subject matter jurisdiction.[4]

                **b.**       **Section 1983 Claim Against Torlakson is Viable Under *Ex Parte Young***

Agency Defendants assert the Eleventh Amendment precludes a Section 1983 official-capacity suit against Torlakson. Plaintiffs maintain they seek only prospective injunctive relief against Torkalson under Section 1983, thus the claim meets the exception to the Eleventh Amendment outlined in *Ex parte Young*, 209 U.S. 123, 157 (1908).

---

[4] Because the claims against Governor Brown are dismissed for lack of Article III standing and Eleventh Amendment immunity, the Court does not reach State Defendants' arguments regarding Defendant Brown's legislative immunity.

The *Ex parte Young* exception to the Eleventh Amendment permits suits for prospective declaratory or injunctive relief if suit is brought against a state official acting in an official capacity. *Ex parte Young*, 209 U.S. 123 (1908). The "obvious fiction" of *Ex parte Young*, however, stretches only so far and is subject to several constraints. *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 270 (1997). These limitations include the following: (1) the action must seek only prospective injunctive relief; it may not challenge past conduct; (2) the action must address an ongoing federal violation; (3) the action cannot be based on state law; and (4) the official sued must have a connection with the law and direct responsibility for enforcing it. *Ex parte Young,* 209 U.S. at 157 (official sued must have some connection to enforcement of allegedly unconstitutional act); *Verizon v. Md., Inc. v. Pub. Serv. Com'n of Md.*, 535 U.S. 635, 645 (2002) (*Ex parte Young* applies where complaint alleges ongoing violation of federal law and seeks relief properly characterized as prospective); *Edelman v. Jordan*, 415 U.S. 651, 675 (1974) (federal court's remedial power consistent with the Eleventh Amendment is necessarily limited to prospective injunctive relief).

As to the first limitation under *Ex parte Young*, Torlakson argues Plaintiffs seek an injunction asking the court to intervene in the State legislative process, but there is no authority that permits a court to direct an elected official or an agency to take a particular position regarding legislation. Moreover, to the extent Plaintiffs seek damages for past conduct, such remedies are foreclosed under the first element of the *Ex parte Young* analysis. Plaintiffs maintain they do not seek anything under their Section 1983 claim other than prospective injunctive relief, and the court can order state officials to work with the state legislature to bring the Education Code into compliance with the due process clause of the U.S. Constitution pursuant to *Serrano v. Priest*, 18 Cal. 3d 728, 749 (1976).

Plaintiffs' prayer for relief is not specific as to what relief is sought with respect to which claims. Plaintiffs' § 1983 claim specifically alleges personal injury, educational loss, and emotional distress; the prayer for relief seeks compensatory damages as well as injunctive and declaratory relief. Due to this ambiguity, the Court must presume all forms of relief alleged in the prayer are directed toward each

claim. State officers in their official capacities are not amenable to a suit for damages under § 1983, thus any claim for monetary damages against Torlakson in his official capacity is barred. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997).

However, Plaintiffs also seek prospective injunctive relief: (1) "An Order directing Defendants to work with the State Legislature to amend the Education Code to ensure students in the juvenile justice system have one responsible educational agency assigned to them regardless of their physical placement location" (FAC, ¶ 127); and (2) "Injunctive relief requiring Defendants to develop policies and procedures to ensure that students in the juvenile justice system have a free and appropriate public education available to them and are evaluated in accordance with the requirements of IDEA" (FAC, ¶ 125.) While the Court may not be empowered to order prospective injunctive relief exactly as Plaintiffs seek it, the Court has considerable discretion in granting and tailoring injunctive relief so long as the injunction is narrowly tailored to supply only the relief to which Plaintiffs are entitled. *U.S. v. AMC Entertainment, Inc.*, 549 F.3d 760, 768 (9th Cir. 2007); *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 558 (9th Cir. 1990). The *scope* of prospective injunctive relief that could be awarded, however, does not affect the cognizability of Plaintiffs' official-capacity claim. Plaintiffs' § 1983 claim seeks prospective injunctive relief, which is the type of relief that can be pursued in an official-capacity suit under *Ex parte Young*, notwithstanding the Eleventh Amendment.

As to the second limitation of *Ex parte Young*, Plaintiffs must allege an ongoing violation of federal law. Agency Defendants argue because S.B. is no longer in the jurisdiction of the juvenile or dependency court, she will no longer be subject to the residency rules Plaintiffs challenge, and the alleged violation is therefore not ongoing. At this stage, it is inappropriate to determine to what degree S.B. may or may not be subject to the jurisdiction of the juvenile or dependency court in the future such that she would be subject to placements by those agencies under the challenged statutes. *Verizon Maryland, Inc.*, 535 U.S. at 646 (citing *Coeur d'Alene*, 521 U.S. at 281 ("An allegation of an ongoing violation of federal law . . . is ordinarily sufficient")). Until S.B. can no longer, as a matter of law, be placed in an institution

by a public agency and assigned an LEA as provided by the California Education Code, the ongoing nature of the violation is sufficiently alleged.

The third prong under *Ex parte Young* requires that the action cannot be based on state law. Agency Defendants argue Plaintiffs allege state laws violate the federal constitution, and though the claim alleges a constitutional violation under § 1983, it is nonetheless based on state law. Agency Defendants cite *Everett H. v. Dry Creek Joint Elementary School Dist.*, No. 2:13-cv-00889-MCE-DAD, 2014 WL 3867461 (E.D. Cal. Aug. 6, 2014), but that case does not state that a § 1983 claim based on an alleged violation of the U.S. Constitution is one predicated on state law. In *Everett*, pro se plaintiffs attempted to state a § 1983 claim against Defendant Torlakson, but they did not allege a constitutional violation. *Id.* at *3-4. Instead, they attempted to use § 1983 to allege Torlakson violated the law by failing to sanction a school under California Education Code § 56845. *Id.* at *4. In dismissing this claim, the court explained a federal court may not grant injunctive relief against state officials sued in their official capacities for a violation of state law. *Id.* Here, as already discussed, Plaintiffs' § 1983 claim is predicated on alleged procedural due process violations under the U.S. Constitution. Any injunctive relief ordered on such a claim would be made on the basis of federal law, not state law. *Ex parte Young* does not preclude such a claim.

The fourth prong of the *Ex parte Young* doctrine requires that the official sued has a connection with the challenged law and direct responsibility for enforcing it. Here, because Torlakson is the California State Superintendent of Public Instruction, he is sufficiently connected to the enforcement of the Education Code, which Plaintiffs challenge as violative of procedural due process, to be amenable to suit. The California State Superintendent of Public Instruction is elected to act as the Secretary and Executive Officer for the State Board of Education and the Chief Executive Officer for the California Department of Education. Cal. Educ. Code §§ 33301-33303. This requires the Superintendent to ensure that school districts comply with the California Constitution and state laws. Cal. Educ. Code §§ 33301-33307. The Superintendent is the Director of Education in whom all executive and administrative

functions of the California Department of Education are vested. *Id.* at §§ 33301-33307. Torlakson's role as the Executive Officer of the Department of Education requires him to administer and enforce all state laws applicable to schools under the California Education Code. As such, the Superintendent is connected to the enforcement of the Education Code, sections of which Plaintiffs allege violate federal law. Torlakson's specific enforcement obligations are a sufficient causal connection to state an official capacity § 1983 claim, *see McRorie v. Shimoda*, 795 F.2d 795, 783 (9th Cir. 1986) and to show a sufficient direct connection under *Ex parte Young*, *see Harris*, 729 F.3d at 943; *see also P.P. v. Compton*, 135 F. Supp. 3d 1098, 1121-22 (C.D. Cal. 2015) (finding fairly direct connection under *Ex parte Young* where school officials had duty to enforce the challenged provision).[5]

Plaintiffs' § 1983 claim adequately alleges a procedural due process violation against Torlakson in his official capacity that fits within the exception to the Eleventh Amendment provided in *Ex parte Young*.

**B.      Section 1983 Claim Against Torlakson is Sufficiently Pled**

Agency Defendants make multiple arguments that, even if the § 1983 claim against Torlakson is not precluded by the Eleventh Amendment, it is insufficiently pled because (1) Plaintiffs claim is really seeking rights to a different statutory scheme, but this cannot be the predicate of a procedural due process claim; (2) there are no allegations showing how S.B. was denied due process given the amount of process available under IDEA; (3) there are no allegations showing that Torlakson caused any alleged deprivation of due process; and (4) the due process claim is improperly premised on a violation of IDEA.

The Due Process clause of the Fourteenth Amendment encompasses a guarantee of fair procedure. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). In the context of procedural due process claims, "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in

---

[5] Agency Defendants citation to *Preschooler II v. Clark County School Bd. of Trustees*, 479 F.3d 1175, 1183 (2007), references the standard for supervisory liability, which is not relevant here.

17

itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Id.* In these type of claims, the constitutional violation actionable under § 1983 is only complete when the state fails to provide due process. *Id.* To determine whether a procedural due process violation has occurred, it is necessary to ask what process the state provided, and whether it was constitutionally adequate. To state a procedural due process claim, a plaintiff must allege two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest; and (2) denial of adequate procedural protections. *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

As the Court understands their first argument, Agency Defendants contend Plaintiffs' § 1983 claim wrongly asserts a right to a different statutory scheme from the one that actually exists under IDEA and the California Education Code. (Doc. 25-1, 35:22-36:3.) The Court does not interpret Plaintiffs' complaint to make such an assertion. Plaintiffs allege S.B. has been deprived of her constitutional right to the education that California has entitled her without sufficient due process procedural protections. They allege the procedural safeguards for ensuring a FAPE were rendered useless and unavailable because of the multiple LEA changes S.B. was subjected to resulting from application of the Education Code's residency rules; the only procedure that was available was a due process complaint *after* S.B. had been denied a FAPE. Plaintiffs' theory appears to be that the California Education Code obviated necessary pre-deprivation procedural safeguards (*e.g.,* notice and some opportunity to participate and be heard regarding S.B.'s educational requirements *before* S.B. was deprived her right to a FAPE). This is a cognizable § 1983 claim for violation of the Constitution's procedural due process guarantee.

Agency Defendants argue the FAC is devoid of facts alleging the extensive procedural processes provided by the IDEA were insufficient; specifically, Agency Defendants argue there is no allegation S.B.'s parents ever requested any process such as an IEP meeting or an educational assessment. Agency Defendants note the California Education Code requires completion of assessments when an exceptional needs student is transferred from one district to another within an academic year; because Plaintiffs never

requested an evaluation, Plaintiffs cannot show it could not have been accomplished, even in light of the multiple transfers S.B. experienced.

While Agency Defendants point to many types of process available to ensure parental participation in the IEP process, Plaintiffs' allegations plausibly imply the procedural safeguards normally available (educational assessments, IEP meetings, etc.) were rendered useless and constructively unavailable because S.B.'s assigned LEA changed so rapidly; in other words, there was insufficient time to *request* an educational evaluation or an IEP meeting. Plaintiffs allege S.B. was sometimes transferred to a new LEA before they were even aware of the identity of the previously assigned LEA. (FAC ¶ 65.) The facts alleged plausibly imply S.B.'s placements were changed with such frequency there was no *time* to initiate any of the procedural safeguards to ensure a proper FAPE determination, nor any time to complete those processes. (FAC, ¶¶ 21-68.) Whether Plaintiffs were, in fact, owed constitutional due process protections before a FAPE determination was made (in the form of IEP offers), what type of process was required, and whether Plaintiffs were unable to effectively initiate any of the required procedures are matters to be addressed on the merits.

Agency Defendants next argue the claim is deficient because it does not sufficiently allege how Torlakson performed any acts that precluded S.B. from receiving an education and due process. In an official-capacity suit, a defendant's liability is connected to the entity's policy or custom that played a part in the violation of federal law. *McRorie*, 795 F.2d at 783. Plaintiffs contend the California Education Code's residency rule precluded proper educational assessments and parent participation in the IEP process which are important and required procedural safeguards to ensuring that a FAPE is not denied. Torlakson's specific enforcement obligations of the California Education Code, as discussed above, is a sufficient causal connection to state an official capacity § 1983 claim, *see id.*, and to show a sufficient direct connection under *Ex parte Young*, *see Harris*, 729 F.3d at 943; *see also P.P. v. Compton*, 135 F. Supp. 3d 1098, 1121-22 (C.D. Cal. 2015) (finding fairly direct connection under *Ex parte Young* where school officials had duty to enforce the challenged provision).

## C.    Plaintiffs' IDEA Claims Against CDE and the State

### 1.    Plaintiffs' IDEA Allegations

As noted above, Plaintiffs' first IDEA claim challenges California's residency rules assigning an LEA based on the geographic location of a student's placement by a public agency (rather than the student's parents' geographic location). In the course of the 2016-2017 academic school year, under these residency rules,[6] S.B. experienced 10 different placements with 10 corresponding changes in the LEA who oversaw her education. (FAC, ¶ 50.)

Plaintiffs maintain the State of California and CDE have the ultimate obligation to ensure a FAPE is provided to special needs students. When it is impossible for a student to receive a FAPE – such as here, by operation of state education law – Plaintiffs maintain the IDEA requires CDE to step in to ensure the educational rights of students like S.B. are protected pursuant to 20 U.S.C. § 1413(g). Plaintiffs seek an injunction requiring Defendants to develop policies and procedures to ensure that students in the juvenile justice system, such as S.B., have a FAPE available to them and are evaluated in accordance with the requirements of the IDEA.

Plaintiffs' second claim under IDEA contends the State and CDE failed to ensure that students who require a residential treatment have placements in the least restrictive environment (LRE), 20 U.S.C. § 1412(a)(5), which Plaintiffs assert is "as close as possible to the student's home," 35 C.F.R. §300.116(b)(3). (FAC, 84.) Plaintiffs maintain that to meet the LRE standard under the IDEA, students must have access to an appropriate residential treatment center *within* the State of California. Placements out of state do not fulfill the LRE standard because it is impossible for students to transition back to their communities when the placement ends, and it impedes parents' right to meaningfully participate in opportunities for family therapy, as may be required by the student's IEP. Plaintiffs seek a judicial order

---

[6] California Education Code §§ 56150, 56162, 56156.4.

1  requiring Defendants to develop policies and procedures to assure residential treatment centers are

2  available in-state for students with severe mental health needs such as S.B.  (FAC, ¶ 91.)

3  **2.  Private Right of Action Under IDEA**

4  The State argues Plaintiffs have no private right of action against it under the IDEA.  The State

5  notes Plaintiffs' claims seek injunctive relief to develop policies and procedures to ensure compliance

6  with IDEA, which implies a breach of the State's duties under 20 U.S.C. §§ 1412(a) and 1415(a) of IDEA.

7  The State argues the Ninth Circuit's decision in *M.M. v. Lafayette School District*, 767 F.3d 842, 860 (9th

8  Cir. 2014), holds these IDEA provisions do not provide a private right of action; as such, Plaintiffs cannot

9  compel the State to develop or implement policies and procedures under §§ 1412 or 1415 of the IDEA.

10  Plaintiffs maintain a private right of action exists when challenging a systemic violation of the IDEA,

11  similar to those permitted to proceed in *Kerr Center Parents Assoc. v. Charles*, 897 F.2d 1463, 1466 (9th

12  Cir. 1990), *Beth V. v. Carroll*, 87 F.3d 80, 86 (3d Cr. 1995), and *Heldman v. Sobol*, 962 F.2d 148, 159

13  (2d Cir. 1992).

14  The State's initial argument is cursory: in three sentences and one citation to *Lafayette*, the State

15  asserts §§ 1412 and 1415 lack a private right of action compelling any of the defendants to develop or

16  implement policies and procedures required by these portions of IDEA.  As discussed in *Beth V. v.*

17  *Carroll*, 87 F.3d 80, 86 (3d Cir. 1996), a case favorably cited by the Ninth Circuit, *see Doe v. Arizona*

18  *Dept. of Educ.*, 111 F.3d 678 (1997), the express private right of action provided in § 1415 is broad – it

19  encompasses *any matter* relating to the identification, evaluation, or educational placement of the child,

20  or the provision of a free appropriate public education to such child.  20 U.S.C. § 1415.  Systemic

21  complaints against state educational agencies for failure to implement or maintain adequate procedures

22  under IDEA have been determined to fall within the scope of this private right of action.  *Doe*, 111 F.3d

23  at 681-83 (cataloging cases involving systemic challenges under IDEA).  As discussed below, while the

24  Court does not find Plaintiffs' complaint to be systemic, it does relate to S.B.'s evaluation, placement, and

25  provision of a FAPE.  20 U.S.C. § 1415(b)(6).  The State's fails to show how the broad and express right

of action in § 1415(i) does not encompasses Plaintiffs' claims or how the claims here are analogous to those in *Lafayette*. In *Lafayette*, the claim against CDE under IDEA was neither systemic in nature, nor involved a matter sufficiently "relat[ed] to the identification, evaluation, or educational placement of a child." Rather, the claim involved a challenge to CDE's oversight of OAH hearings and CDE's decision to stay its investigation of the parents' complaint under 34 C.F.R. § 300.152 pending the outcome of a due process hearing. *Lafayette*, 767 F.3d at 860. The court concluded neither § 1412 or § 1415 provided a right of action to challenge CDE's oversight of the OAH, over which CDE has no jurisdiction, or to challenge CDE staying its investigation. Based on the argument presented, the Court finds Plaintiffs' claims are not precluded for lack of a private right of action under IDEA.

### 3. State is Not a Proper Party Defendant to Plaintiffs' IDEA Claims

The State argues it is not a proper party in any action for declaratory or injunctive relief under IDEA. Plaintiffs assert only that they are entitled to a remedy from the State, but offer no authority or compelling reasons why the State is a proper party defendant to their IDEA claims.

Although it is the State which receives federal funding under IDEA, administrative implementation, oversight, and enforcement of IDEA at the state and local level is accomplished by the "state educational agency" which in California is the CDE. 20 U.S.C. §§ 1412(a)(11)(A); 1401(32). The State of California itself does not implement, oversee, or enforce the provisions of the IDEA. The State of California is not alleged to have any role in enforcing the California Education Code or carrying out and overseeing the mandates of IDEA. As such, Plaintiffs provide no allegations how the State is a proper party defendant and how the State itself could supply any relief to Plaintiffs under IDEA. The State is not a proper party defendant to Plaintiffs' IDEA claims.

### D. IDEA Exhaustion Requirements

#### 1. Parties' Arguments

Defendants (both Agency and State Defendants) argue Plaintiffs were required to exhaust completely their administrative remedies before pursuing the IDEA claims filed with this Court; to

accomplish exhaustion, Defendants contend, Plaintiffs were required to complete the administrative process against the LEAs, even after CDE and the State of California were dismissed from the administrative process for lack of OAH jurisdiction.  Defendants argue the claims against CDE and the State are fundamentally predicated on whether S.B. was denied a FAPE when her LEA was reassigned based on the location of S.B.'s placement by various public agencies; whether a FAPE required that S.B. receive a residential placement; and, if so, whether that placement must be *in-state* to provide S.B. with the Least Restrictive Environment under the IDEA.  Defendants argue these findings first should be made by education experts in the administrative setting.  Because Plaintiffs voluntarily settled their IDEA claims against the LEAs, Defendants argue Plaintiffs' IDEA claims against CDE and the State are not exhausted.

When the OAH agreed and dismissed CDE and the State as parties, Plaintiffs maintain the claims against those entities were exhausted to the extent possible. (Plaintiffs' Oppo., Doc. 31, 9-10 (citing *Abraham P. v. L.A. Unified Sch. Dist.*, No 2:17-cv-03105-GW, 2017 WL 4839071, at *5 (C.D. Cal. Oct. 5, 2017).)  Plaintiffs argue any further exhaustion (completion of the administrative process against the LEAs) should be excused because pursing a decision against the individual school districts (as opposed to the settlement that Plaintiffs reached with the LEAs) does not "make sense."  Plaintiffs contend they would not be able to enforce findings made by the OAH in a subsequent proceeding against CDE and the State because they were no longer parties to that process.  Moreover, the relief Plaintiffs seek against CDE and the State was, as determined by OAH and argued by CDE and the State, outside the OAH's jurisdiction to grant.  And, Plaintiffs' note, pursuing the administrative process to a decision against the LEAs before instituting suit against CDE and the State would create other procedural problems.  Specifically, if forced to complete administrative proceedings against the LEAs following CDE and the State's dismissal by the OAH, the limitation period to file suit against CDE and the State in this Court

would expire and time-bar the claims.[7]  Also, if Plaintiffs were required to complete exhaustion by obtaining a hearing-officer decision on the remaining claims against the LEAs, Plaintiffs argue they would lose the benefit of settling with the LEAs and receiving an immediate placement for S.B., and would potentially be required to pay their own attorney fees, even if they were ultimately the prevailing party.  20 U.S.C. § 1415(D)(i) (attorneys' fees may not be awarded to prevailing parent if relief finally obtained by parent is not more favorable to the parents than a timely offer of settlement).  Finally, Plaintiffs note that, in support of their motions to be dismissed from the OAH process, CDE and the State characterized Plaintiffs' claims as systemic issues of statutory compliance.  Plaintiffs maintain the Ninth Circuit has not required exhaustion of systemic IDEA claims.

Defendants respond that Plaintiffs' opposition argument ignores the importance of the administrative process as explained in *Hoeft v. Tucson Unified School District*, 967 F.2d 1298, 1303 (9th Cir. 1992).  According to Defendants, because Plaintiffs settled the underlying administrative complaint against the LEAs, Plaintiffs did not pursue to decision whether any LEA failed to provide Plaintiff a FAPE, and therefore there is no final determination of what S.B.'s education needs are, if different from what was provided in her operative IEP.  Defendants maintain Plaintiffs' claims against CDE and the State are predicated on the "unsubstantiated presumption" that S.B. was denied a FAPE, and insist there is a dispute as to what educational program S.B. required to receive a FAPE.  Moreover, Defendants argue, to the extent that CDE was responsible for provision of any services to S.B. directly, that would require a finding that the underlying LEAs were not able to provide education and special services to offer S.B. a FAPE.  Defendants maintain that without these underlying findings, exhaustion is incomplete and cannot be excused as to any of Plaintiffs' claims.

---

[7] 20 U.S.C. § 1415(i)(2)(B) (setting forth 90-day statute of limitations).

**2.     Applicable Legal Framework**

    **a.     IDEA Administrative Procedures**

IDEA, 20 U.S.C. §§ 1400-91, was enacted to confer on disabled children the substantive right to a FAPE, 20 U.S.C. § 1400(c), which consists of education instruction specially designed to meet the unique needs of a disabled child, supported by those services necessary to permit a child to benefit from the instruction, *Board of Educ. v. Rowley*, 458 U.S. 176, 188-89 (1982).  Under the statute, an exceptional needs student is entitled to an IEP, a tailored education program detailing the student's abilities, educational goals, and specific services designed to achieve those goals within a designated timeframe. 20 U.S.C. §1401(a)(20), § 1414(d).  The IDEA places on the individual States the primary responsibility for carrying out the goals of the statute and authorizes federal funding for states providing the special education required by the statute.  20 U.S.C. § 1412.

The IDEA requires educational agencies to implement procedures which provide "[a]n opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child[.]" 20 U.S.C. § 1415(b)(6). The parent or educational agency begins the process by filing a due process complaint.  20 U.S.C. § 1415(b)(6), (b)(7).  The matter proceeds to a "due process hearing" before an impartial hearing officer. § 1415(f)(1)(A). The hearing officer may order relief, such as requiring the educational agency to provide services to fulfill its obligations to provide a FAPE or to reimburse the parent for the cost of acquiring necessary services.  20 U.S.C. §§ 1401(22), 1412(a)(10)(C)(ii).  A party aggrieved by the findings and decisions made by the hearing officer has the right to bring a civil action in federal or state court within 90 days from the date of the decision of the hearing officer.  § 1415(i)(2).

These administrative appeal procedures must be pursued before seeking judicial review. 20 U.S.C. § 1415; *Smith v. Robinson*, 468 U.S. 992, 1011-12 (1984).  The IDEA exhaustion requirements embody principles of administrative law and the educational underpinnings of the IDEA:  it is the agencies, not the courts, which "ought to have primary responsibility for the programs Congress has

charged them to administer." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). This promotes the twin purpose of protecting administrative agency authority and promoting judicial efficiency. *Id.* In the IDEA context, exhaustion of administrative remedies "allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *Hoeft,* 967 F.2d at 1303. Courts have frequently concluded that, based on these policy aims, settlement or dismissal of IDEA claims during the administrative process *before* the matter has been heard and a decision issued by the hearing officer does *not* constitute exhaustion. *See, e.g, S.A.S. v. Hibbing Pub. Sch.*, No. 04-cv-3204-LRT-RLE, 2005 WL 1593011 (D. Minn. July 1, 2005); *Hamilton v. Bd. of Sch. Commrs.*, 993 F. Supp. 884, 998 (S.D. Ala. 1996) (considering settlement tantamount to exhaustion undermines purposes of the exhaustion requirement).

### b. IDEA Administrative Procedures Applicable to Certain Non-IDEA Claims

IDEA's exhaustion requirement has application to other types of federal claims because IDEA is not the only statute protecting the interests of children with disabilities in a school setting. For example, ADA's Title II, 42 U.S.C. §12131 *et. seq.*, forbids any "public entity" from discriminating based on disability. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits any federally funded "program or activity" from discriminating based on disability. When disability issues arise in schools, IDEA often overlaps with other disability statutes. The Supreme Court considered the overlap of these laws in *Smith* where the plaintiffs sought a FAPE, but stated claims under RA and the Fourteenth Amendment's Equal Protection Clause along with their IDEA claim. 468 U.S. at 1009-21. *Smith* held IDEA altogether foreclosed those additional claims because IDEA was "the exclusive avenue" through which a child with disability could challenge the adequacy of his education. *Id*. at 1009. In passing the Handicapped Children's Protection Act of 1986, 100 Stat. 796, Congress overturned *Smith*'s preclusion of non-IDEA claims while also including an exhaustion requirement for non-IDEA claims:

> Nothing in [IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA], title V of the Rehabilitation Act [including §504], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under [IDEA], the [IDEA's administrative procedures] shall be exhaustion to the same extent as would be required had the action been brought under [IDEA].

20 U.S.C. § 1415(*l*). Congress noted the first half of § 1415(*l*) (up until "except that") "reaffirm[ed] the viability" of federal statutes like ADA or RA "as separate vehicles," no less integral than the IDEA, "for ensuring the rights of handicapped children." H.R. Rep. No. 99-296, p. 4 (1985); *Fry*, at 750. Following this enactment, federal circuit courts interpreted the scope of § 1415(*l*) under two dominant paradigms: an injury-centered approach and, later, a relief-centered approach.

The Ninth Circuit first considered the scope of § 1415(*l*) in *Witte v. Clark County School District*, where parents complained that school officials physically and emotionally abused their son who suffered from Tourette's Syndrome; the parents sought compensatory and punitive damages under § 1983, RA, ADA, and state tort law. 197 F.3d 1271 (9th Cir. 1999). The district court granted summary judgment to the school officials on the federal claims for lack of exhaustion under § 1415(*l*), but the Ninth Circuit reversed, emphasizing that monetary damages were ordinarily unavailable under IDEA and thus the plaintiffs were "not seeking relief that is also available under" IDEA as required "under the plain words" of § 1415(*l*). *Id.* at 1275.

The Ninth Circuit then revisited this interpretation in *Robb v. Bethel School District v. Bethel School District #403*, holding that "when a plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies, exhaustion of those remedies is required." 308 F.3d 1047, 1048 (9th Cir. 2002). In *Robb*, a student diagnosed with cerebral palsy was regularly removed from her classroom for peer-tutoring without the supervision of a certified teacher and conducted in a dim hallway without a chair or desk. *Id.* The Robbs filed suit under § 1983 for money damages only, but specified those damages were for "lost educational opportunities and emotional distress, humiliation, embarrassment, and psychological injury. *Id.* at 1048. The district court dismissed

for failure to exhaust under § 1415(*l*), which the Ninth Circuit affirmed. The appellate court stated concern that parents would be opted out of IDEA exhaustion simply by making a demand for money or services that IDEA does not provide, and adopted the rule that § 1415(*l*) applied to any case in which a plaintiff alleged injuries that could be addressed *to any degree* by the IDEA's administrative procedures and remedies. This was considered an injury-centered approach, which was also adopted by the Seventh and Tenth Circuits. *See McCormick v. Waukegan Sch. Dist. No. 60*, 374 F. 564, 568-69 (7th Cir. 2004); *Cudjoe v. Indep. Sch. Dist. # 12*, 297 F.3d 1058, 1066 (10th Cir. 2002). Other circuits also generally agreed that a plaintiff could not evade § 1415(*l*)'s exhaustion requirement by simply limiting the relief sought to money damages. *See Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 64 (1st Cir. 2002); *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 917 (6th Cir. 2000); *N.B. by D.G. v. Alachua Cnty. Sch. Bd.*, 84 F.3d 1376, 1379 (11th Cir. 1996).

In 2011, however, the Ninth Circuit confronted circumstances in *Payne v. Peninsula School District*, 653 F.3d 863 (9th Cir. 2011), that caused the court to overturn, in an en banc opinion, the injury-centered approach in *Robb*. In *Payne*, the mother of an autistic student brought an action against several schools and school officials, asserting Washington state law tort claims and § 1983 violations arising out of the school's use of a "safe-room" for the purposes of time-outs against the student; only money damages were sought. The district court dismissed the entire case under *Robb* for lack of exhaustion, and a divided panel of the Ninth Circuit affirmed finding that "as an educational strategy (even if a misguided or misapplied one), [use of the safe room] was better addressed initially by the administrative process." A motion for rehearing en banc was granted, the panel decision was vacated, and the en banc court held, over dissent, that § 1415(*l*)'s exhaustion requirement "applies to claims only to the extent that the relief actually sought by the plaintiff could have been provided by the IDEA." *Id.* at 874. The court termed this a "relief-centered" approach that "more aptly reflects the meaning of the IDEA's exhaustion requirement." *Id.*

In determining whether § 1415(*l*) required non-IDEA claims to be exhausted, *Payne* instructed district courts to "start by looking at a complaint's prayer for relief and determine whether the relief sought is also available under the IDEA. *Id.* at 875. If it is not, then it is likely that § 1415(*l*) does not require exhaustion in that case." *Id.* The court further explained § 1415(*l*) "requires exhaustion in three situations:" (1) where a non-IDEA claims seeks damages for the costs of a private education, the measure of damages is relief that is available under IDEA and exhaustion is required; (2) where a non-IDEA claim seeks prospective injunctive relief to alter an IEP or educational placement of a disabled student, that relief is available under IDEA so exhaustion is required; and (3) where a plaintiff seeks to enforce rights that arise as a result of a denial of FAPE, that relief arises under IDEA or its substantive standards, and "so the relief follows directly from the IDEA." *Id.* As to claims seeking money damages, the court stated a plaintiff could not avoid exhaustion through artful pleading if the measure of a plaintiff's damages is the cost of counseling, tutoring, or private schooling. *Id.* at 877. In responding to concerns of the dissenting opinion that this approached created an easy "end-run around the exhaustion requirement," the majority reasoned that so long as a plaintiff does not seek relief based on an IDEA right, and does not seek a remedy provided by the IDEA, then she is not bound by the IDEA's exhaustion requirement. *Id.* at 879. In remanding the case to the district court with this guidance on exhaustion, the court commented on the plaintiffs § 1983 claim for damages. *Id.* at 883. The court noted that if the damages sought were for injuries resulting from Fourth or Eighth Amendment violations committed by schools, then § 1415(*l*) would not apply, but if the emotional distress stemmed from concern that their child was not receiving a FAPE, then exhaustion is required. *Id.*

In 2017, the Supreme Court in *Fry v. Napoleon Community Schools*, 137 S.Ct. 743 (2017), granted certiorari to consider how to determine whether a claim was "seeking relief that is also available under" IDEA, triggering exhaustion under § 1415(*l*). The Court observed the primacy of FAPE in IDEA's statutory scheme and determined that § 1415(*l*)'s exhaustion rule hinges on whether the lawsuit seeks relief for the denial of FAPE. "If a lawsuit charges [a denial of FAPE], the plaintiff cannot escape §

29

1415(*l*) merely by bringing her suit under a statute other than IDEA. Rather that plaintiff must first submit her case to an IDEA hearing officer, experienced in addressing exactly the issues she raises." *Id.* If, in a suit brought under a different statute, the remedy sought is not for the denial of FAPE, then exhaustion under IDEA's procedures is not required. *Id.* In making this determination, however, the Court expressly declined to determine whether a non-IDEA claim, predicated on the denial of FAPE but seeking a specific remedy *not* available under IDEA, should be construed as a claim "seeking relief that is also available under" IDEA. *Id.* at 752 n.4, 754 n.8. This would include a claim for money damages under RA for emotional distress caused by the denial of FAPE.

In many cases, it is fairly clear how a non-IDEA claim, although arising out of injuries that occurred at school, is separate and distinct from the denial of FAPE. *E.g.*, *Abraham P. v. L.A. Unified Sch. Dist.*, No. 17-cv-3105-GW (FFMx), 2017 WL 4839071, at * (C.D. Cal. Oct. 5, 2017) (damages sought for physical abuse at school not related to implementation of child's educational program). For such a claim, it does not matter what specific remedy is sought because the claim cannot be said to be "seeking relief that is also available under IDEA" as the injury alleged was not predicated on a denial of FAPE. The injury would have been incurred regardless whether a FAPE had been provided. For those types of claims, exhaustion of IDEA's procedures becomes unnecessary because findings about the provision of FAPE are immaterial and render the educational expertise of an administrative agency unessential.

The difficult question – the question *Fry* left unanswered – is how to apply § 1415(*l*) to non-IDEA claims where the injury is due to a denial of FAPE, but the remedy sought is a form of damages technically unavailable under IDEA. The obvious example is a § 504 RA claim seeking emotional distress damages stemming primarily from the denial of FAPE. This difficult question must be answered here because, as discussed below, Plaintiffs' RA and ADA claims appear predicated on the denial of FAPE. Plaintiffs argue that characterization is immaterial because, even if predicated on the denial of FAPE, the RA and ADA claims seek money damages for emotional distress that is not available under

IDEA and thus do not come within § 1415(*l*)'s exhaustion requirement.

One district court very recently has considered non-IDEA, FAPE-based claims seeking monetary damages similar to those presented here. *Paul G. v. Monterey Peninsula Unified School Dist.*, No. 16-cv-05582-BLF, 2018 WL 2763302 (N.D. Cal. June 8, 2018). Upon concluding the non-IDEA claims were FAPE-based under *Fry*, the court considered how to apply § 1415(*l*) in the face of the monetary damages sought. Because *Fry* did not resolve this question, the court determined *Payne*, although decided prior to *Fry*, provided relevant guidance for exhaustion of FAPE-based, non-IDEA claims seeking monetary damages. *Id.* at * 7-8. The district court relied, in part, upon *Payne*'s explanation that if § 1983 "emotional distress" damages stemmed from the plaintiffs' concern that an adequate education was not provided, § 1415(*l*) exhaustion would apply. The *Paul G.* court noted the plaintiffs in *Paul G.* sought compensatory damages for their injury, including psychological and emotional distress which was premised on a denial of FAPE; the educational and developmental losses, pain and damage to the plaintiff's social development, and the emotional distress all stemmed from the plaintiff's purported deprivation of a FAPE – i.e., for not being placed in an in-state residential treatment facility. *Paul G.*, 2018 WL 2763302, at *8. The court concluded that because the plaintiff's claims were premised on a violation of IDEA, and arose under IDEA's substantive standard, the relief "follows directly from the IDEA" and exhaustion is required pursuant to the guidance in *Payne*. *Id.* (citing *Payne*, 653 F.3d at 875.)

While the contours of *Payne*'s viability after *Fry* may be subject to some debate, it does provide essential guidance on the damages question *Fry* declined to answer. As articulated in *Paul G., Payne*'s reasoning and examples show § 1415(*l*) encompasses FAPE-based, non-IDEA claims regardless whether the precise remedy sought is technically available under IDEA. And, there are practical reasons why this is the correct interpretation of § 1415(*l*).

First, if a request for damages unavailable under IDEA exempts a non-IDEA claim from exhaustion under §1415(*l*), then most of *Fry*'s analysis is obsolete. This is so because, regardless whether a claim is FAPE-based or not, so long as it seeks a remedy not technically awardable by a hearing officer

at the administrative level, it is not subject to § 1415(*l*).

Second, not only would such a short-cut analysis of § 1415(*l*) ignore much of *Fry*'s interpretative reasoning, it would eviscerate the purpose behind exhaustion of IDEA claims. If FAPE-based claims – the gravamen of which is the denial of FAPE – are exempted from exhaustion merely because they seek damages, district courts would be making FAPE determinations without the benefit of an administrative hearing and decision by an expert in education law, and without an administrative record collecting the relevant documentation and witness testimony conducive to judicial review. Additionally, the agency would be deprived of any opportunity to remedy the denial of FAPE in the first instance. In other words, FAPE-based claims that *should* be adjudicated by an administrative hearing officer would be subject to immediate judicial review, which undermines the public policy supporting IDEA's appeals process.

Finally, exempting a sect of FAPE-based claims from exhaustion would produce unintended, detrimental results. The Court is hard-pressed to articulate examples of FAPE-based RA and ADA claims that would *not* be accompanied by an IDEA claim that *is* subject to exhaustion. By exempting from exhaustion FAPE-based RA and ADA claims seeking damages, it would be permissible to initiate an IDEA claim with the agency while simultaneously filing RA and ADA claims with a court based on the exact same issues of FAPE. Not only would this be incredibly inefficient for the court without the benefit of the agency's educational expertise or an administrative record, but there is a chance of conflicting decisions and issue preclusion becomes a very real and complicated possibility.[8]

---

[8] Section 1415(*l*)'s exhaustion requirement of non-IDEA claims has other practical implications. Parents and students often articulate formal claims under RA and ADA along with IDEA claims in their due process complaints to the California OAH in an effort to satisfy § 1415(*l*)'s exhaustion requirement. The OAH routinely dismisses RA and ADA claims as outside its jurisdiction, but then proceeds to adjudicate the IDEA claim. *Cayla R. v. Morgan Hill Unified Sch. Dist.* No. 5:10-cv-04312 EJD, 2012 WL 1038664 at *6 (E.D. Cal. Mar. 27, 2012) (noting that OAH routinely dismisses RA claims for lack of jurisdiction). This has created some confusion about whether exhaustion is actually complete as to the RA and ADA claims. *See Abraham P. L.A. Unified School District*, No. 17-cv-3105-GW (FFMx), 2017 WL 4839071 (C.D. Cal. Oct. 5, 2017) (noting OAH's dismissal of non-IDEA claims constituted exhaustion under IDEA, but ultimately holding claims were not FAPE-based and § 1415(*l*) did not apply so exhaustion was irrelevant).

Dismissal by OAH alone cannot constitute exhaustion because it does not achieve any of the goals of the appeals procedures. It is the continued litigation of the FAPE issues in the IDEA claim at the administrative level, culminating in a hearing and decision, which constitutes the exhaustion of any overlapping FAPE-based RA and ADA claims. Congress could not have

32

In sum, FAPE-based IDEA claims seeking money damages for injuries caused by the deprivation of FAPE are subject to exhaustion under §1415(*l*). *Payne*, 653 F.3d at 875-77, 879-83; *Paul G.*, 2018 WL 2763302, at *7-8; *see also Fry*, 137 S.Ct. at 752 (FAPE-based claims are subject to exhaustion under § 1413(*l*)).

### c. IDEA Administrative Procedures May be Excused

That is not the end of the exhaustion analysis, however. The exhaustion requirement is not absolute, and there are situations when it serves no useful purpose. Parties need not exhaust the procedures set forth in 20 U.S.C. § 1415 where to do so would be either futile or inadequate. *Honig v. Doe*, 484 U.S. 305, 327 (1988). Congress outlined three situations where it would not be appropriate to require the use of the due process procedures outlined in § 1415 before filing suit: (1) where it would be futile to use due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to law; and (3) it is improbable that adequate relief can be obtained by pursing administrative remedies (*e.g.*, the hearing officer lacks the authority to grant the relief sought). *Hoeft.*, 967 F.2d at 1303 (citing H.R. Rep. No. 296, 99th Cong., 1 Sess. 7 (1985)). In determining whether these exceptions apply, the question is "whether pursuit of administrative remedies under the facts of a given case will further the general purposes of exhaustion and the congressional intent behind the administrative scheme." *Id.*

Exhaustion has been excused on these grounds for "systemic" IDEA claims. The Ninth Circuit has characterized an IDEA claim as "systemic" if "it implicates the integrity or reliability of the IDEA dispute resolution procedures themselves, or requires restructuring the education system itself in order to

---

intended exhaustion of non-IDEA claims under IDEA's appeals procedures to mean mechanically presenting the claims to the agency only to be dismissed – that would be empty and meaningless, accomplishing nothing exhaustion is meant to achieve. This also means that FAPE-based RA and ADA claims do not need to be pled in a due process complaint directed to the OAH to be exhausted; it is pointless to require a plaintiff to file claims with the OAH over which the entity lacks jurisdiction to adjudicate. In this Court's view, if the claims are FAPE-based, *and the overlapping issues of FAPE have been addressed by the agency through a hearing and decision in an IDEA claim*, then it is adjudication of *that* overlapping IDEA claim that completes exhaustion as to the FAPE-based RA and ADA claims.

comply with the dictates of the Act." *Doe*, 111 F.3d at 682. These "systemic" claims are excused from exhausting IDEA's administrative appeals procedures because the nature of the claim renders those procedures futile (the nature of the state's administrative process is being challenged in an across-the-board manner – *e.g.*, the very process of bringing due process complaints is inadequate), and no adequate relief can be obtained by pursuing administrative remedies (the remedy sought is outside the agency's ability to grant – *e.g.*, restructuring the state process for IDEA due process appeals). *Id.*[9]

Having laid out the relevant IDEA exhaustion law, the Court now considers whether Plaintiffs must exhaust IDEA's administrative appeal procedures as to their IDEA claims as well as their non-IDEA claims, and if so, whether any of the claims should be excused from the IDEA administrative procedures.

### 3. IDEA Claims Were Not Properly Exhausted

Plaintiffs' IDEA claims are subject to exhaustion. *Smith*, 468 U.S. at 1011-12. Plaintiffs cite *Abraham P.*, 2017 WL 4839071, for the proposition they have completed any possible exhaustion requirements as to the IDEA claims against CDE and the State because those parties were dismissed from the underlying administrative proceedings for lack of jurisdiction; however, *Abraham P.* is not persuasive. There, the court found OAH's dismissal of RA and ADA claims for lack of jurisdiction to be sufficient exhaustion under IDEA, which is unconvincing for the reasons set out, *supra*, at footnote 7. But, more importantly, the *Abraham P.* court had already concluded those claims were not FAPE-based and exhaustion was not required under § 1415(*l*). To the extent the *Abraham P.* was suggesting OAH's dismissal of claims constitutes exhaustion, this Court is not persuaded.

---

[9] *Doe* cited several examples of claims deemed "systemic" by various courts of appeal: a challenge to state's entire system for resolving due process complaints under IDEA, *Beth V. Carroll*, 87 F.3d 80, 88 (3d Cir. 1996); allegations that a city's school system deprived all students of proper notice and hearing under IDEA, *J.G. v. Board of Education*, 830 F.2d 444, 446-47 (2d Cir. 1987); claim that a state's entire special education system was infirm for which no remedies were available at the administrative level, *New Mexico Ass'n for Retarded Citizens*, 678 F.2d 847, 850 (10th Cir. 1982); and a claim challenging a state's method of appointing hearing officers at the agency level as improper under IDEA, a challenge that implicated the entire due process system, *Heldman v. Sobol*, 962 F.2d 148, 159 (2d Cir. 1992).

Here, OAH dismissed CDE and the State from the administrative proceedings, but the IDEA claims against them were factually and legally intertwined with the IDEA claims against the LEAs. Because the claims against CDE and the State involved the same denial of FAPE and the same individual factual issues as to development of S.B.'s IEP and the substantive details of her educational placement, to sufficiently exhaust those claims, the claims against the LEAs had to proceed through the administrative appeal process.

Moreover, settlement of the intertwined claims against the LEAs did not serve as exhaustion of the IDEA claims against CDE and the State because settlement is not tantamount to a substantive decision following a hearing; it does not provide the agency an opportunity to apply its expertise, create a solution, or develop the evidence and testimony to assist with judicial review. *S.A.S.,* 2005 WL 1593011 at *3 (considering settlement tantamount to exhaustion undermines purposes of the exhaustion requirement); *Hamilton*, 993 F. Supp. at 998 (same).

### 4. Exhaustion of RA and ADA Claims is Required under § 1415(*l*)

In *Fry,* discussed in some detail above, the Supreme Court concluded § 1415(*l*) required exhaustion "when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way." *Fry*, 137 S. Ct. at 755.

*Fry* involved a child, E.F., with a severe form of cerebral palsy who relied on a service dog, Wonder, to assist her with various activities. Pursuant to the IEP process, E.F.'s school district forbade her from bringing Wonder to school, offering E.F. a human aide instead. *Id.* at 751. The Frys filed suit against the school district asserting violations of RA and ADA, which the trial court dismissed pursuant to § *1415(l)* for lack of administrative exhaustion under the IDEA as the relief sought was available under the IDEA. On appeal, the Supreme Court reversed, explaining § *1415(l)* required exhaustion "when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way." *Fry*, 137 S. Ct. at 755.

To aid lower courts in determining whether a complaint seeks redress for the denial of a FAPE

or, instead, for wrongs independent of a FAPE, the Court posed two questions to use as "clues"; (1) could the claim be brought if the alleged conduct occurred at a public facility that was not a school?' and (2) could an adult, such as a visitor or employee, have pressed essentially the same grievance? Applying these questions to E.F., the Court noted the Frys were not challenging the district's provision of educational opportunities; by providing a one-to-one human aid, E.F.'s parents conceded that all of E.F.'s educational needs were satisfied. Wonder's assistance, however, was not simply about accessing educational services. Wonder assisted E.F. in living independently by helping her with activities such as retrieving dropped items, helping her balance, opening and closing doors, turning on and off lights, helping her take her coat off, and helping her transfer to and from the toilet. Precluding Wonder's assistance, the Court reasoned, was like requiring a student who used a wheelchair to be instead carried by an aid or requiring a blind student to be led around by a teacher instead of permitting that student to use a guide dog or a cane. This type of claim could be pressed at any public facility, not just a school because it did not center on providing appropriate educational services, it centered on accommodating access of a disabled person to a public facility. It could also be brought by a visitor or an employee seeking equal access to the facilities because the accommodation, at its heart, had little to do with the provision of educational services. A further sign that the gravamen of the suit is a denial of FAPE can emerge from the history of the proceedings and whether the plaintiff previously invoked IDEA's formal procedures to handle the dispute. "A plaintiff's initial choice to pursue that process may suggest that she is indeed seeking relief for the denial of a FAPE – with the shift to judicial proceedings prior to full exhaustion reflecting only strategic calculations about how to maximize the prospects for such a remedy." *Id.* at 757.

### a. Gravamen of Due Process Claim is Not the Denial of FAPE

Plaintiffs' § 1983 claim is predicated on a constitutional deprivation *distinct* from S.B.'s claim for denial of FAPE under IDEA, and does not fall within the ambit of § *1415(l)* as articulated in *Fry*. The deprivation alleged is *not* that S.B. was denied a FAPE, but that S.B. was denied required procedural

safeguards prior to denying her an appropriate education. The denial of FAPE is distinct from the denial of due process procedures meant to ensure notice and an opportunity to be heard occur, to the extent possible, before depriving a person of a property right. While denial of these procedures themselves can result in the denial of FAPE under IDEA, Plaintiffs' allege a distinct constitutional procedural due process right to these procedures.

Agency Defendants' citation to *C.O. v. Portland Public Schools*, 679 F.3d 1162, 1167-68 (9th Cir. 2012), is distinguishable. There, the plaintiff alleged she was denied sufficient access to discovery during administrative IDEA proceedings, but the procedures were available and could be remedied through IDEA. Unlike here, the plaintiff in *C.O.* did not make any allegation that the underlying procedures were rendered unavailable in a manner that precluded her from constitutionally required procedural due process; her allegation pertained only to preclusion of FAPE under IDEA. While there is no fundamental right to an education of *any* type under the federal constitution, state law may nonetheless create an entitlement to education or other property rights to which constitutional procedural due process then applies. *Goss v. Lopez,* 419 U.S. 565, 574 (1975) ("Having chosen to extend the right to an education to people of appellees' class generally, Ohio may not withdraw that right on grounds of misconduct absent, fundamentally fair procedures to determine whether the misconduct has occurred."). California's adoption of IDEA and its concomitant guarantee of a FAPE to exceptional needs students is the alleged property right to which Plaintiffs claim constitutional procedural due process applies. In that way, Plaintiffs' claim is *both* that the IDEA processes precluded by application of California's residency rules denied S.B. a FAPE under IDEA, but also separately and distinctly denied procedural due process rights guaranteed under the Fourteenth Amendment. Because the procedural due process claim under § 1983 is not primarily predicated on the denial of a FAPE, exhaustion is not required under § *1415(l)* as explained by *Fry*.[10]

_____

[10] Torlakson is not precluded from raising this argument again if it becomes clear on a fuller record that Plaintiffs' alleged

### b. Gravamen of RA and ADA Claims is Denial of FAPE

Plaintiffs contend their ADA and RA claims do not center on the denial of FAPE to S.B. and exhaustion is not required under § 1415(*l*).

Section 504 of RA is a general civil rights provision "to prevent discrimination against all handicapped individuals . . . . in employment, housing, transportation, education, health services, or any other Federally-aided programs. 29 U.S.C. § 794. Section 504 applies to all public schools that receive federal funding. 29 U.S.C. § 794(b)(2)(B). A "public entity can be liable for damages under [Section] 504 if it unintentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons." *Mark H.*, 513 F.3d at 938. Students denied meaningful access to state educational benefits are able to seek a "full panoply of remedies, including equitable relief and compensatory damages under § 504. *Id.* at 930. Section 504's implementing regulations require a FAPE in an educational setting. 34 C.F.R. §§ 104.1-104.61. Section 104.33 of title 34, Code of Federal Regulations, requires recipients of federal funds to "provide a [FAPE] to each qualified handicapped person." 34 C.F.R. § 104.33(a). ADA's Title II similarly provides that no qualified individual with a disability shall, by reason of that disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity. 42 U.S.C. § 12132.

Pursuant to *Fry*, the gravamen of Plaintiffs' RA and ADA claims is a denial of FAPE. The ADA and RA claims are pled in a formulaic manner, incorporating by reference all the IDEA allegations regarding denial of FAPE. (*See* FAC, ¶¶ 92, 103.) Plaintiffs' RA claim alleges CDE and the State discriminated against S.B. by failing to ensure that appropriate residential treatment centers were available in the State of California. (FAC, ¶ 95.) Plaintiffs allege this denied S.B. a FAPE and an equal opportunity to participate in the benefits and services provided by a public education in violation of 34

---

damage really is predicated on the denial of FAPE.

C.F.R. § 104.4. (FAC, ¶ 98.) Yet, this claim is predicated on the notion that S.B. requires a residential placement, and more than that, one that is in-state; these are issues that involve S.B.'s IEP and the provision of a FAPE, which is not the type of claim that can be pressed against any other place of public accommodation than a school or by any adult other than a student.

Plaintiffs' ADA claim similarly asserts CDE and the State denied access to educational services by failing to ensure that an appropriate residential treatment placement was available in California. (FAC, ¶ 106.) Plaintiffs also allege CDE and the State discriminated against S.B. by assigning an LEA based on the geographic location of her placement by the juvenile court. Both of these allegations center on the denial of a FAPE – one that is in the least restrictive environment and one that allows her parents input into the IEP process and appropriate educational assessments under IDEA. As with the RA claim, this type of claim revolves around S.B.'s particular IEP and IDEA requirements for IEP development; it is not a claim that can be pressed against any other place of public accommodation beside a school or by any adult other than a student.

Plaintiffs' maintain the "clues" set out in *Fry* "do not work" to properly assess their RA and ADA claims, but that difficulty appears to stem from the fact that the claims center on the denial of FAPE. Plaintiffs are unable to frame a theory of their RA and ADA claims that could be brought against any public place of accommodation, not just a school, and by any person with a similar disability, not only a student, as explained in *Fry*. Moreover, that Plaintiffs have pursued administrative proceedings based on identical or similar allegations supports a conclusion that the claims are premised on a denial of FAPE (*see* Doc. 26-1, pp. 5-33). *Fry*, 137 S.Ct. at 575. Plaintiffs' FAC and briefs in opposition to the motion to dismiss fail to articulate a separate and distinct basis how S.B. was denied equal access to the benefits of a public education that is not based on FAPE. The Court concludes Plaintiffs' RA and ADA claims are predicated on the denial of FAPE.

**5.      Whether Exhaustion of IDEA, RA, and ADA Claims May Be Excused**

Concluding IDEA's exhaustion requirements were not satisfied here, the Court turns to whether exhaustion should be excused.   As noted above, exhaustion of the IDEA administrative appeals procedures may be excused where (1) it would be futile to use due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to law; or (3) it is improbable that adequate relief can be obtained by pursing administrative remedies (e.g., the hearing officer lacks the authority to grant the relief sought).   *Hoeft*, 967 F.2d at 1303.  It is Plaintiffs' burden to prove exhaustion should be excused.  *Kutasi v. Las Virgenes Unified School District*, 494 F.3d 1162, 1168 (9th Cir. 2007) ("party that alleges futility or inadequacy of IDEA administrative procedures bears the burden of proof"); *Doe*, 111 F.3d at 681.

Plaintiffs maintain their IDEA claims are "systemic," and exhaustion should be excused on grounds that it is futile and because the relief available in the administrative process is inadequate.  *Doe*, 111 F.3d at 682; *Hoeft*.  Plaintiffs also argue their RA and ADA claims seek emotional distress damages, which cannot be awarded by a hearing officer.  For this reason, Plaintiffs argue the lack of an adequate remedy in the administrative process should excuse exhaustion of IDEA appeals procedures.

In three somewhat procedurally and factually similar cases, various district courts have refused to waive IDEA's exhaustion requirement.  Defendants argue these cases provided persuasive reasoning that IDEA exhaustion of any of Plaintiffs' claims cannot be excused; Plaintiffs maintain the cases are distinguishable.

In *Washington v. California Department of Education*, No. 2:10-cv-0186-FCD-KJM, 2010 WL 4157139 (E.D. Cal. Oct. 19, 2010), *affirmed* 472 Fed. Appx. 645 (9th Cir. Apr. 5, 2012), the plaintiff was a dependent of the Sacramento Juvenile Court and was placed in a residential treatment facility in Florida. The Florida placement could not retain the plaintiff in its program past her 18th birthday, so she requested a new placement in California when she became an adult.  *Id.* at * 2.  Various LEAs disputed who had responsibility for the plaintiff's program once she became an adult (her mother resided in one district, but

the person assigned as her educational representative lived in a separate district), and a due process complaint was filed on the plaintiff's behalf with the OAH, naming as defendants several LEAs, the Sacramento County Probation Department, and the California Department of Education, among others. *Id.*

The OAH granted CDE's motion to dismiss, and all the remaining LEAs, except one, entered into a settlement agreement with the plaintiff. *Id.* at \*3. Prior to settlement, the plaintiff agreed to accept a placement offer in Colorado, but continued to assert her desire to return to California. *Id.* The remaining LEA who did not settle with the plaintiff proceeded to an OAH hearing where the ALJ determined that particular LEA had no responsibility for the plaintiff's program, and, as a result, OAH never took up the question whether the plaintiff had a right to receive a California residential treatment placement – a placement the plaintiff had claimed CDE was responsible for ensuring. *Id.*

Subsequently, the plaintiff discharged herself from the Colorado facility and returned to California; but, the two LEAs required to provide her with educational services were unable to place her in a California program because none could accept students over the age of 18. *Id.* The plaintiff filed suit directly in district court against CDE, the Department of Mental Health, the Department of Social Services, and CDE's Superintendent of Public Instruction alleging IDEA and RA claims based on California's failure to make available in-state residential treatment placements to the plaintiff as violative of her right to a FAPE. *Id.*

In determining the plaintiff had failed to exhaust her administrative remedies, the court noted the plaintiff's prior due process complaint was settled, which did not constitute exhaustion, and the only issue that did go forward to hearing did not relate to the issues she currently pursued in the district court. *Id.* at \*5-6. The court concluded she was seeking new relief, implicating provisions of the IDEA that should first be adjudicated at the agency level, such as whether the plaintiff is entitled to an in-state residential placement from the new LEAs now responsible for providing her educational services. The court did not find the OAH's prior dismissal of CDE provided an excuse for failure to exhaust, because the claim

against CDE was based on the same ground the plaintiff could have pursued against the LEAs in an administrative proceeding, and due to settlement, "a necessary exploration of the issues was never accomplished." *Id.* at *6. The court also determined the plaintiff's claims sought new relief against different LEAs which should first be adjudicated at the agency level: namely, whether the plaintiff is entitled to a residential program in California, and if so, which parties are responsible for affording her this relief. *Id.* As a result, exhaustion was not futile. *Id.*[11] The court reasoned these are the types of technical questions of educational policy that should be initially resolved with the benefits of agency expertise, and the complaint was dismissed. *Id.* (quoting *Hoeft*, 967 F.2d at 1305).

In *Rivera v. Fremont Union High School District*, No. 5:12-cv-05714-EJD, 2013 WL 4674831 (N.D. Cal., Aug. 30, 2013), a student's representative filed a due process complaint against the student's school district (Fremont) for denying the student a FAPE and against CDE for indirectly depriving the student a FAPE by not ensuring the existence of appropriate in-state residential treatment facilities. The OAH dismissed CDE from the administrative proceedings for lack of jurisdiction and then dismissed Fremont without prejudice as the representative did not hold the rights to pursue a claim on the student's behalf. *Id.* at *1. The representative then filed a complaint in district court against Fremont and CDE. *Id.* The student settled with Fremont, dismissing with prejudice the claims against the district in exchange for placement at a residential facility in Texas. *Id.* at *2. The court dismissed the remaining state-wide impact claims against CDE, reasoning that without an underlying finding in an administrative proceeding against Fremont that the student was denied a FAPE in not providing a residential placement, the court would be unable to order CDE to effectuate the changes requested by the student for lack of Article III

---

[11] It is worth noting that *Washington* cites to *Robb v. Bethel Sch. Dist.*, 308 F.3d 1047, 1050 (9th Cir. 2002), in its exhaustion analysis. *Robb* held that IDEA exhaustion was required in every case where the injuries alleged could be addressed to *any* degree by IDEA's administrative procedures or if IDEA's ability to remedy an injury is unclear. This is injury-based approach was overruled by the Ninth Circuit sitting en banc in *Payne*, which narrowed the exhaustion requirement, applying only to claims where the relief sought "followed from" IDEA or was available under IDEA. Thus, *Washington* was applying a more "muscular" exhaustion requirement under *Robb* than was later adopted in *Payne*. *See Payne*, 653 F.3d at 873-74. Nonetheless, *Washington* refused to excuse IDEA exhaustion for the same persuasive reasons IDEA exhaustion is not be excused here.

standing.  *Id.* ("Here, a finding that the Student has been denied a FAPE in the ways identified by Plaintiff would likely constitute the requisite injury necessary to proceed on the systemic claims against CDE.").  Moreover, the court found CDE's dismissal from the underlying administrative proceedings was insufficient to establish exhaustion because a completed administrative proceeding on the merits as to this student was required to exhaust the claims, including the state-wide impact claims against CDE.  *Id.* (an administrative proceeding on the merits as to the individual student "is nevertheless necessary in order to exhaust Plaintiff's claims, including his impact claims").  The court reasoned it could not order CDE to effect systemic change without, at the very least, a determination the student was denied a FAPE.  *Id.*  As to the settlement with Fremont, and whether it was possible to reinstate a subsequent administrative proceeding against it necessary for exhaustion, the court noted the settlement was the student's decision and the student must bear the consequences flowing from that choice.  *Id.*  As such, the court dismissed the claims against CDE.  *Id.* at *3.

In *Paul G. v. Monterey Peninsula Unified School District*, No. 16-cv-05582, 2018 WL 2763302, (N.D. Cal. June 8, 2018), a student (Paul) suffering from autism filed a due process complaint against his school district (Monterey), the Department of Social Services (DSS), and CDE for failure to ensure that an appropriate in-state residential treatment facility was available for students aged 18-22.  The OAH dismissed DSS and CDE for lack of jurisdiction, and Monterey and the student agreed to a settlement whereby the student was placed in a residential facility in Kansas (the settlement excluded tort, negligence, or civil rights claims).  *Id.* at *2

Approximately 8 months after the settlement, Paul filed suit in district court against Monterey and CDE, alleging CDE violated the IDEA, among other claims.  *Id.*  The FAC was dismissed, *see Paul G.*, 256 F. Supp. 3d 1065 (N.D. Cal. 2017), and a second amended complaint was filed asserting claims under RA and ADA, seeking injunctive relief and monetary damages.  *Paul G.,* 2018 WL 2763302, at *2.  The court determined Plaintiffs' RA and ADA claims were not properly exhausted under IDEA's appeals procedures and dismissed the claims.  *Id.* at *12.  The court reasoned the non-IDEA claims

involved the denial of a FAPE under *Fry*, and although monetary damages were sought, the Ninth Circuit's decision in *Payne* dictates that exhaustion of these claims is nonetheless required under § 1415(*l*). *Id.* at *7-8. The court further determined dismissal of CDE by OAH from the underlying administrative proceedings did not constitute exhaustion of the claim against CDE because the issues involved technical educational matters that required the agency to consider in the first instance. *Id.* at * 8. Due to Paul's settlement with Monterey prior to an administrative hearing and decision on these issues, the court found IDEA's appeals procedures were not properly exhausted.

In considering several exceptions to exhaustion, the court determined the appeals procedures should not be waived. *Id.* at *9-11. Rather, the student was obligated to litigate at the administrative level whether Monterey was unable to provide a residential placement in California to satisfy IDEA's LRE requirement. *Id.* Were such a placement necessary to meet the LRE standard, then the hearing officer would need to decide whether CDE was responsible to provide those services directly to the student. *Id.* The court reasoned, citing extensively to *Rivera*, these findings would be best addressed in the administrative process as they are technical questions of educational policy and methodology. *Id.*

### a. The IDEA Appeals Process is Neither Futile Nor Lacks Adequate Remedies

Though *Washington, Rivera,* and *Paul G.* stated somewhat different grounds, their refusals to waive IDEA exhaustion, at their distilled core, are predicated on one fundamental premise: claims that arise from and center upon highly fact-specific determinations about the provision of FAPE to one special needs student must be developed first at the administrative level. These courts also recognized that, when the plaintiff seeks a remedy that cannot be awarded by an administrative hearing officer (*i.e.,* ensuring in-state residential placement), this does not necessarily mean exhaustion serves no useful purpose; rather, adequately stating a claim for the remedy sought in a judicial forum may *require* the administrative agency to make particular findings of fact. *See, e.g., Paul G.*, 2018 WL 2763302, at *8 (findings by administrative officer required to trigger duty of CDE).

44

Plaintiffs' IDEA, RA, and ADA claims against CDE and the State involve, and indeed are predicated on, specific educational issues within the purview and expertise of the agency: *e.g.*, whether S.B. required a residential placement to receive a FAPE, whether S.B. required an in-state placement to meet the LRE standard, whether S.B.'s parents were precluded from participating in IEP proceedings and whether S.B.'s educational needs were not properly evaluated or re-evaluated by virtue of California's residency rules. These claims are intertwined and overlap with the claims against the LEAs. All the predicate findings to support the relief Plaintiffs seek against CDE and the State were at issue in the claims against the LEAs. Moreover, the findings regarding the LEAs' obligations would potentially trigger any duties CDE owed directly to S.B. in providing educational services. While Plaintiffs argue they would not have been able to bind CDE and the State to the findings made by OAH with respect to the LEAs, they cite no authority for that proposition.

Although CDE and the State were dismissed from the administrative proceedings, the factual basis necessary to support the relief sought against those entities continued to be adjudicated at the administrative level. It is questionable whether Plaintiffs can plausibly allege a claim against CDE and the State that depends on fact-specific issues of S.B.'s educational needs without agency findings on these issues. *Rivera*, 2013 WL 4674831, at *2 (court found that, although administrative proceedings would likely only go forward against the LEA as OAH had no jurisdiction over systemic claims against CDE, such a proceeding on the merits was required to exhaust the impact claims against CDE because everything sought against CDE required a finding that student was denied a FAPE); *Washington*, 2010 WL 4157139 at * 6 (despite CDE being dismissed by OAH in prior administrative proceeding, claims against LEA should be exhausted before claim on same grounds could be pursued against CDE in federal court so that the agency could first consider threshold issues such as whether the plaintiff is entitled to a residential program in California, who is responsible for providing her with that relief, and whether the plaintiff "is even entitled to the educational placement that is at the core of her complaint"); *see also Doe v. Arizona Dept. of Educ.*, 111 F.3d 678, 681 (9th Cir. 1997) (futility exception to exhaustion requires a

showing that no useful purpose would be served by filing an administrative complaint). Completing the appeals process by obtaining a decision from a hearing officer on the IDEA claims against the LEAs is also necessary to furnish this Court with a record conducive to judicial review. Under these circumstances, the administrative process is not futile. *J.B. v.* Avilla, 721 F.3d 588, 594-95 (8th Cir. 2013) (In cases where the aims of exhaustion can be met, the administrative process is not considered futile).

There are practical problems with the court adjudicating these issues in the first instance without the benefit of the agency's expertise. Not only is the Court ill-equipped to make this type of inquiry into the details of S.B.'s precise educational needs given her health concerns in the first instance, the fact that the LEAs are not parties to this case is problematic. The witnesses, documents, and educational experts (teachers, school psychologists, etc.) are largely in the employ of the various LEAs. Yet, the LEAs are not obligated by the same initial disclosure rules as parties, which will complicate and lengthen discovery since most of the relevant evidence will be in the possession of the LEAs. And, without an administrative record and decision to which the LEAs would have been parties, the Court will be required to make findings about the provision of educational services by the LEAs in a litigation where they are completely absent. From this perspective, too, completing the administrative appeals process to a hearing decision was not futile – it was crucial to providing a record conducive to judicial review.

The Court understands well the competing interests Plaintiffs faced in choosing to settle their underlying due process complaint with the remaining LEAs (*e.g.*, technical legal issues such as statute of limitation concerns and attorneys' fees as well as desiring a residential placement for S.B.'s health and educational needs as quickly as possible). But settlement always includes weighing the benefits of a negotiated resolution against the possibility of obtaining additional or different relief through further litigation. The Court finds the realities of that choice do not excuse the administrative appeals procedure or render it futile.

Plaintiffs also argue the administrative forum did not offer the remedies they seek against either the State or CDE, i.e., injunctive and declaratory relief and money damages. Exhaustion may be waived or excused where it is improbable that adequate relief can be obtained by pursing administrative remedies. *Hoeft*, 967 F.2d at 1304.

Pursuant to the factual circumstances here, *Rivera* and *Paul G.* supply convincing reasons why a plaintiff cannot establish the administrative appeals process lacks adequate remedies when the administrative agency's final decision itself supplies the factual basis necessary to plausibly allege a claim for that relief in a judicial forum. Rivera, 2013 WL 4674831, at * 2 (systemic remedies against CDE in a judicial forum require findings at the administrative level). For example, Plaintiffs allege CDE was required to "step in" to ensure S.B.'s educational rights were protected, citing 20 U.S.C. § 1413(g). Section 1413(g) requires the SEA to provide educational services directly to students if the SEA determines the LEA is, for example, unable to establish and maintain programs of FAPE or the LEA has two or more children with disabilities who can be best served by a regional or State program or service delivery system designed to meet the needs of such children. 20 U.S.C. § 1413(g)(1)((B), (D). To determine whether any duty by CDE was triggered under § 1413(g), the agency would have to first determine whether a student or students were not being provided a FAPE and whether the LEA was unable to provide students the required services. It is not foregone that Plaintiffs' claims could not be remedied by the agency, and moreover, acquiring the remedy Plaintiffs seek here against CDE and the State requires a finding in this regard. *See Paul G.*, 2018 WL 2763302, at *10. Although it is *possible* that *complete* relief cannot be awarded by the hearing officer, that does not mean the administrative appeals process lacks the ability to provide any of the remedies Plaintiffs' seek, such as compensatory education services and an independent educational assessment, even if not funded by CDE and the State as Plaintiffs request here. Moreover, it is likely impossible for Plaintiffs to establish *any* right to relief against CDE or the State without the underlying findings of FAPE that must be made by the agency.

### b.　Plaintiffs' IDEA Claims are Not Systemic

The Court also finds Plaintiffs' IDEA claims are not systemic such that exhaustion should be excused.  IDEA claims may be characterized as "systemic" where they implicate "the integrity or reliability of the IDEA dispute resolution procedures themselves," or require "restructuring the education system itself in order to comply with the dictates of the Act;" but a claim "is not 'systemic' if it involves only a substantive claim having to do with limited components of a program, and if the administrative process is capable of correcting the problem."  *Id.* at 628.  These claims are frequently excused from exhaustion of the appeals procedures because the nature of systemic claims renders the administrative appeal process futile *and* unable to award adequate remedies.

The individualized, fact-specific nature of the alleged violations of IDEA here do not lend themselves well to characterization as "systemic."  Certainly, the remedies Plaintiffs seek are broad and system-wide (injunctive relief invalidating portions of the Education Code and requiring the State and CDE to ensure in-state residential care facilities), but the violations Plaintiffs allege, unlike truly "systemic" challenges, are predicated on S.B.'s particular educational needs, which are formulated in large part on the specific nature of her mental health concerns.  The violations alleged do not apply broadly to all exceptional needs students in California such that the basic statutory goals of IDEA are threatened, nor do they implicate the reliability of the IDEA dispute resolution procedures themselves or require restructuring the education system to comply with the dictates of the Act.  *Doe*, 111 F.3d at 682.  The alleged violations of IDEA are fact-specific, highly individualized determinations as applied to S.B. relating to her educational plan and how that plan addresses her particular mental health challenges.  The IDEA claims Plaintiffs allege are not "systemic."

### E.　Failure to Join Indispensable Parties

Agency Defendants argue Plaintiffs' suit is foreclosed because they have failed to join required parties under Rule 19 – the LEAs who were assigned to provide S.B. with special education and services. Agency Defendants argue Plaintiffs' claims are entirely predicated on proving the LEAs failed to provide

S.B. a FAPE, which cannot be done without the LEAs' presence in the case. Because Plaintiffs' settled their due process complaint against the LEAs, those parties can never be joined to the case, requiring dismissal of the entire matter. Agency Defendants rely on *Rivera*, where the court dismissed a case against CDE based on similar grounds because the LEA was no longer a party to the litigation. Agency Defendants also cite *Paiute-Shoshone Indians of Bishop Community of Bishop Colony, Cal. V. City of Los Angeles*, 637 F.3d 993, 1001 (9th Cir. 2011), for the proposition that, without the LEAs' presence in this lawsuit, State Defendants cannot adequately defend against Plaintiffs' allegations that the LEAs failed to provide S.B. with a FAPE.

Pursuant to Rule 19, a non-party is indispensable to an action if (1) the non-party is "required" under Rule 19(a); (2) the non-party cannot be joined; and (3) the non-party's absence would mandate dismissal according to a weighing of the factors outlined in Rule 19(b). Under 19(a), the court conducts a two-pronged analysis to determine whether a party is required. First, the court is to consider whether complete relief is possible among those already parties to the suit. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990). Alternatively, the court decides whether the non-party has a "legally protected interest in the suit" that would be impaired or impeded by adjudicating the case without it or an existing party would be subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations. *Id.* If either of these prongs is answered in the affirmative, then the absent party is "required" under Rule 19(a), and that party must be ordered to join. If joinder of that party is not possible, the court then considers whether the four factors under Rule 19(b) indicate the action could proceed among the existing parties or should instead be dismissed.

In *Paiute-Shoshone*, the court determined that the United States was a required party under Rule 19. Based on the plaintiff's theory of the case, full relief could not be awarded to the plaintiff without the United States (a non-party) conveying title to land it held to the plaintiff. To bind the United States by such an order, the United States was a required party. The court then determined the United States could not be joined as a party based on sovereign immunity and proceeded to analyze whether the suit could

nonetheless proceed without the United States under Rule 19(b). The court concluded the third factor under Rule 19(b) weighed in favor of dismissal of the suit because the city would have to defend actions of the United States in conveying title to property. Agency Defendants argue that under 19(b), like in *Paiute-Shoshone*, the absence of the LEAs in this case precludes any determination that any LEA violated S.B.'s right to a FAPE, and Agency Defendants cannot be required to defend the underlying IDEA claims against the LEAs Plaintiffs allege failed to serve S.B.

The Court agrees litigation of Plaintiffs' FAPE-based claims is extremely complicated without the presence of the LEAs, as discussed in the exhaustion section above. However, Agency Defendants' Rule 19 argument is incomplete. First, it assumes without analysis that the LEAs are a required party under 19(a). Without a showing the LEAs are required under Rule 19(a), there is no basis to consider whether the LEAs are indispensable under Rule 19(b) such that the litigation cannot proceed without them. Second, Plaintiffs' § 1983 claim against Torlaksen is the only viable claim, as set forth above, and it is not based primarily on denial of a FAPE. There is no need to prove, for purposes of that claim, the LEAs denied Plaintiff a FAPE. The remaining FAPE-based claims must be dismissed for lack of exhaustion, so Defendants' argument that Plaintiffs' claims required proving that the LEAs denied S.B. a FAPE is simply inapplicable. Accordingly, Agency Defendants have not met their burden to show that the LEAs are required parties to this litigation under Rule 19. *Markah*, 910 F.2d at 558; *Biagro W. Sales Inc. v. Helena Chem. Co.*, 160 F. Supp. 2d 1136, 1141 (E.D. Cal. 2001) (party moving for dismissal for failure to join a required party bears the burden in producing evidence in support of the motion).

**F.     Arguments Not Addressed**

State Defendants argue Plaintiffs' RA and ADA claims must also be dismissed for failure to state a claim on multiple grounds, and the claims are precluded by the Tenth Amendment and the Separation of Powers Doctrine. (*See* Doc. 28-1.) State Defendants also contend Plaintiffs' FAPE-based claims must be dismissed under the claim preclusion doctrine in that Plaintiffs' claims are attacking the placement

50

decisions made through juvenile court proceedings.[12] (*Id.*)  As the Court has dismissed all claims against the State and Governor Brown on other grounds, the Court does not reach these additional arguments.

Agency Defendants also argue Plaintiffs' IDEA, RA, and ADA allegations fail to state a claim against CDE for which relief can be granted, on multiple grounds.  (*See* Doc. 25-1, 19:4-30:2.)  As these claims are dismissed for failure to exhaust, the Court does not reach Agency Defendants' additional arguments as to these claims.

## V.     CONCLUSION AND ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that:

1.  State Defendants' Motion to Dismiss is GRANTED;

2.  Agency Defendants' Motion to Dismiss is GRANTED in part;

3.  Plaintiffs' sixth cause of action against all defendants for declaratory relief is DISMISSED without prejudice for lack of subject matter jurisdiction pursuant to the Eleventh Amendment;

4.  Plaintiffs' IDEA, RA, and ADA claims are dismissed against CDE and the State for failure to exhaust under IDEA;

5.  Plaintiffs' Section 1983 claim against Brown is dismissed without prejudice pursuant to the Eleventh Amendment; and

6.  Agency Defendants' motion to dismiss Plaintiffs' Section 1983 Claim against Torlakson is DENIED.

IT IS SO ORDERED.

Dated:  **August 27, 2018**                    **/s/ Lawrence J. O'Neill**
                                                        UNITED STATES CHIEF DISTRICT JUDGE

---

[12] Plaintiffs' viable Section 1983 claim does not challenge the appropriateness of the placements assigned by Fresno Juvenile; rather it challenges the lack of due process available to adequately ensure an appropriate education *before* it was denied to S.B.